The case for argument this morning, consolidated for argument, is Mark Jones et al. v. Ford Motor Company and a number of other companies as well. So the way that argument is proceeding based on the earlier court order is that counsel for the plaintiff's appellant has eight minutes, no, twenty minutes, but it includes your rebuttal time. So just remember that. And then we have eight minutes for Mr. Baltadine arguing standing and injury. Then Mr. Van Ort from Volkswagen is arguing about the Washington Privacy Act, my understanding, and that's eight minutes. And then finally, Mr. Wolfe, representing Toyota, will argue whatever remaining issues there are, and there's four minutes for that. So you may proceed. Thank you, Your Honor. Joel Ard for the plaintiffs, and I am joined by Mr. Jones. My argument will proceed in three parts. First, an overview of the fact allegations of the complaints and why the defendants contend that doesn't create a cause of action. And then the first issue on appeal, whether each defendant has carried its burden to convince you that plaintiffs have standing. And then third, the WPA merits. The complaint alleges facts which, if proven, show four distinct violations of the Washington Privacy Act. Defendants intercepted text messages, recorded text messages, recorded call logs, and installed a pen register on plaintiff's vehicles. The complaints allege that each defendant sells cars equipped with infotainment systems. Counsel, did any of the defendants do anything with respect to your clients other than sell a car that has certain capabilities? Yes, Your Honor, the complaint very clearly alleges that they designed an infotainment system. Right, they designed it and they sold it to you, but did they do anything else? Did officials, I didn't read it as saying, for example, that officials of any of the defendants actually, you know, took any of this information by a human being connected with the defendants? Am I right about that? If your question is have they copied the information back off the vehicles, no, we have no allegation as to that. But divulging the information that's taken out of the Privacy Act is not a violation of the Privacy Act. It used to be, and the legislature removed that. So a Privacy Act violation occurs by virtue of interception and recording. Divulging is actually not a separate claim. So they don't need to take it off the vehicle to violate the Privacy Act. In fact, that's not a violation of the Privacy Act. So would it be your position that every time a smartphone is sold, it's a Privacy Act violation because it collects information? Absolutely not, Your Honor. The Washington Supreme Court has very clearly held that text messages are protected, but that if I text you, your phone does not violate the Privacy Act by receiving the text that I sent. What we have here is a very different situation where a device was intentionally created for the purpose of copying messages off a smartphone and permanently storing them in a manner where the owner of the device, the driver of the car, can't access or delete them. I don't think there's anything like that in any Washington Privacy Act case. What's the injury? The injury is, yes, Your Honor, the injury is intrusion on seclusion, is the classic Privacy Act violation. A number of courts have found that this kind of copying constitutes the common law tort of intrusion upon seclusion. In your opinion, that's all you need? Yes, Your Honor. The Supreme Court, the Washington State Supreme Court has very clearly laid out that the Privacy Act violation, let me flip to that, has only four elements. And, sorry, I will jump ahead to answer your question. And those four elements are that a private communication is recorded by a device without consent. There has never been a Washington State Supreme Court case that requires, as the defendants would have you find, some sort of additional or extra injury, whether monetary or otherwise. And that is classic privacy law, that the invasion is the harm. And that's very clear in the Washington State Supreme Court case. But doesn't it require some human being? Here it seems to me that all you have is a speculative potential that some human being would eventually access this. It's kind of like storing your own photos on a thumb drive or something. I mean, you've moved it from one device to another. But unless a person is involved, where is the actual injury? Your Honor, that's not what the State Supreme Court has said about the Washington Privacy Act. The injury arises from the unconsented-to copying of the data. Now, Bilgey seems to say otherwise, doesn't it? Bilgey is dicta in an unreported appellate court case, Your Honor, that says you can't sue. And this is so after he's failed at the trial court on appeal. For the first time, he says, my text messages were intercepted not by the police officer who was posing as the minor he was soliciting for sex, but by the software the police officer used. So that argument, the court clearly says, first of all, was waived. And second of all, they say the software itself is not an actor with agency. Now, that's the only time a Washington appellate court case has ever required an actor with agency. And what they say is that software isn't an actor with agency. But here... Objects. Yes, Your Honor. Because what you have here is an object. What we have here is a corporation, four corporations in court today, who installed a pen register on a vehicle. That's a clear, distinct, and separate violation of the Washington Privacy Act. I'm assuming, and if it's not in the record, correct me, but I'm assuming that Ford, GM, Toyota, Volkswagen, et cetera, do not make these systems themselves. The allegation in the record is that they worked with corporations to design them, and that they know the functionality of them, and that they purchased and installed them. I mean, that's how OEM equipment works. They buy brakes, they make engines, they buy different parts. You have not sued the manufacturers? No, Your Honor, because they didn't install the pen register. It's these corporate defendants that installed the equipment on the vehicle. But the question I have really stems from transunion, and that is the harm. So this is a lot to me like a bad credit report with egregious errors that just, quote, sits in the file, and nothing happens. So is it bad? Do you not like it? That's right. But is there any harm? So what's the difference between this and a credit report sitting in a file, and here you have sitting in, within the software, the alleged recording? If it's like transunion, Your Honor, then the district court should remand back to Thurston. I mean, again, the defendants have a burden of showing you that there is a harm sufficient for standing under Lujan. They have that burden because they elected federal court. My clients filed in Thurston County Superior Court. If there's no harm, there's no standing. If there's no causation, and that's one of their arguments. Their argument is whatever might have happened, we didn't cause it. There's no causation. There's no standing under Lujan, and you must remand. Well, that isn't how I understand standing. Your clients have alleged an injury personally. They say, we bought a car. It has this stuff on it. The stuff is a violation. So they have standing to sue. And removal doesn't change that. Removal is a location. That's all. Respectfully, Your Honor, I think it does change that. What my clients alleged was a violation of the Washington State Privacy Act. The defendants elected federal court. The defendants elected to show Article III standing. Standing rules in state court are drastically different than federal court rules. And we don't have an obligation to show injury, causation, and redressability in federal court. They do. If you don't think there's injury, causation, or redressability, remand it back to Thurston County. But we didn't elect federal court. We didn't elect Article III jurisdiction, and we don't have an obligation to show you Article III jurisdiction. Now, on the merits, I think we're right. The defendants, as I understand it, petitioned to remove this to federal court. Yes, Your Honor. Did you oppose that? Did I? You can't oppose the removal petition. Oppose the removal. I don't think there's a mechanism to oppose a notice of removal, Your Honor. You sure about that? We did not file a motion. You didn't file an opposition to it. We didn't file a motion to remand, but when they filed a 12B6, we responded to the district court that the contents of their 12B6 argument— But no motion to remand. We raised that— No objection to the removal. Doesn't that constitute consent? No, Your Honor. They have a burden that increases at every stage of the litigation to affirmatively demonstrate the elements of standing. I agree that the face of the complaint shows statutory removal jurisdiction under CAFA. When they then come to court and say, this complaint shows no harm, this complaint shows no injury, this complaint shows no causation, that's when I said to the district court, if any of those arguments are correct, remand it to Thurston County. But it's not my burden. Counsel, it sounds to me like you're conflating the concept of whether there's a valid claim with the concept of standing, which is quite different. I don't think so. I mean, I think what they're saying is you can't successfully state a claim. I think that's all they're saying. Your Honor, this court held in Lady V. Crane that the standards under 12B1 and 12B6 are identical. And if you were to read their motions, assume that I had filed in federal court and that I had a jurisdictional burden, their motions could as easily be brought under 12B1 and 12B6 and say no harm, ergo, no WPA violation, or no standing. That's their burden. That's a burden they assume to show injury, causation, and addressability, and they argue that none of those are present. So... But on the, I mean, anyway, it seems circular to me because your complaint alleges sufficiently that there is standing. Under federal law, too, because it says I personally have been harmed because you did such and such to this car, and I bought the car, and now I'm harmed. But if that's not... So that's sufficient to demonstrate Article III standing. It doesn't mean you win. It doesn't mean you state a claim, but it seems to me that you have standing based on your own complaint. I have standing. Then another issue under the WPA is, it seems to me that the issue here is that the car companies are manufacturers. They obviously use third-party parts, as you've already explained, whether it's brakes or an info system, but they are a manufacturer of this, and my reading of the WPA would not include manufacturing. So how does this situation of manufacturing fit into the WPA in your view? I would begin with RCW 9.73.260. It's a violation of the WPA to install a pen register, and a pen register is a device that records or decodes electronic impulses that identify the numbers dialed or transmitted on the telephone line to which such device is attached. That's what we allege the infotainment system does. When the phone is attached to it, it records and decodes electronic impulses that identify the numbers dialed. They installed it in the car. So that's a clear violation of RCW 9.73.260. They installed a pen register. The pen register they installed records call logs. There was a movie about 10 years ago with Tom Cruise where he walks into a Macy's-type department store, and the overhead speaker, the minute he walks in the room, says, Welcome back to Macy's, Mr. Smith. How are those chinos working out? We have them on special today. Has Macy's violated the Washington statute? No, Your Honor. It's recording. The violation is private communications. So the beginning of the Washington Privacy Act defines what is covered, and they're letters, telegrams. I mean, the act predates statehood. It starts in 1881. I assume that the Macy's store, in my hypothetical, is actuated by the presence of a cell phone in Tom Cruise's pocket. Has Macy's violated the statute? Not if it has. I mean, it would have to record either phone numbers on the cell phone or text messages on the cell phone. How do they know it's Mr. Smith? I mean, this has been a case under the Washington Privacy Act that a district court in this district agreed geolocation data is not protected by the Privacy Act. So taking messages off are private communications, but geolocation data is not a communication under the Privacy Act. So it's just not protected by the act. Okay. So you're resting on the Washington Privacy is recording, not interception. Is that right? No, Your Honor. We allege recording and interception. Their challenge to interception says, well, it's not intercepted if it got there already or if it got to the recipient before it got to the vehicle. That has been absolutely rejected. That argument arises only in a dissent. And so in State v. Roden, the majority of the court says that the timing issue is not relevant to whether or not it's been intercepted. The dissent says, I would hold that the text messages weren't intercepted because they got to the device where they were sent. And that's the case where the heroin dealer's phone is taken by the police and he starts reading the messages. And the court doesn't care about the timing issue. They say, you know, we have expanded Privacy Act protections to cover new technologies. We've never constricted those protections. And that the issue of whether or not the text message gets to the phone before it's read by the police officer is simply not relevant to whether or not it's been intercepted. So I would say that the Supreme Court has absolutely rejected that issue of whether timing matters. What's your best case? What about Alexa? Alexa is often, in effect, listening in on conversations and certain transactions are recorded and kept there for a period of time and then later supposedly deleted. Is that a violation of Washington Privacy Act? I would assume, I don't know, Your Honor, whether that is something that has been consented to or not. And there is, you know, an issue of consent to disclosure. Consent could be an issue here as well, correct? We clearly allege that no plaintiff has this disclosed to them and that there is no consent to it occurring. Their defense to that is to say that there's sort of generic consent because everybody knows that text can be copied. Again, absolutely rejected by the Washington State Supreme Court that says the mere fact that it can be copied does not constitute consent to it being copied or a waiver of those privacy protections. They analogize it to a letter in the mail. The fact that someone could open my mail doesn't remove my privacy interest and the letter I send doesn't mean I've made that letter public. I think your colleagues had a question and then you might want to reserve your time after that. Yes, Your Honor. What's your best Washington case for saying that the statute applies to manufacturers like these defendants? I would say the issue of whether they're manufacturers is not clearly raised in a case. I would say State v. Well, let me just simplify the sentence. What's your best Washington case to say that the WPA applies to these defendants? I would look at State v. Gunwale and State v. Rodin.  federal or state statute, that it imposes an obligation in the state based on the state constitution that's more protective than the federal constitution, and that the State Supreme Court routinely expands protections to meet new and changing technologies. It doesn't constrict them. And with that, I'll reserve two minutes and 40 seconds. Thank you. Good morning. May it please the Court. I am Petter Batalden, appearing on behalf of Ford Motor Company. I'm pleased to be joined by Aaron Van Oort for Volkswagen and Eric Wolf for Toyota. And since Your Honor has already made introductions and described the different emphases that I will start in on the Article III points. And I'd like to start by saying that I sympathize with Judge Graber's difficulty with the circularity of plaintiff's position on Article III standing. It reminds me a bit of the quote that we included in our red brief from Justice Ginsburg's opinion in the Arizona State Legislature case, don't confuse weakness on the merits with the absence of standing. Standing is a very low barrier in this case. You heard from Mr. Ard that he's analogizing his Privacy Act claim to the common law tort of intrusion on seclusion. That's exactly what TransUnion requires for the Article III injury requirement to be satisfied, an analog to a historic common law claim, and that's satisfied here. Then you have the fairly traceable requirement, which is about the lowest standard of causation known to the law. That's satisfied because Ford and the other manufacturers made the vehicles. Without that manufacturing, we wouldn't be here today. And finally, there's redressability. If the plaintiffs were to be able to move forward with their claim, and if they prevailed, they would seek and recover statutory damages. So I don't think the elements of Article III standing are particularly challenging here. I would like to answer a couple of the Court's questions that came up during Mr. Ard's argument. First, Mr. Ard focuses extensively on Washington Supreme Court cases that he say impose a lower burden. But all of those cases that he cites, almost without exception, are criminal cases or regulatory cases where there is no requirement of the statute that a plaintiff show an injury. This is the statutory injury requirement, which is different from the Article III harm that needs to be shown. Here, in order to show an injury to business, person, or reputation, the plaintiffs had to plead some sort of injury over and above what Article III requires. It's a higher burden to show a statutory injury. They have not done that here. Judge Hawkins, you asked about removal. As Mr. Ard indicated, the plaintiffs did not move to remand the case after it was removed. But I don't think removal really matters here in the grand scheme of things. Article III jurisdiction has to be shown. We acknowledge we bear the burden as the removing party. And we've shown the elements of Article III standing. So Article III jurisdiction is satisfied here. I mean, I recognize that the defendants are here on a removal situation in federal court, and you have this burden on standing. But it does seem like, in the arguments, that you're opposing plaintiffs, but you're, in effect, not opposing them on the standing issue, correct? Your Honor, I suppose you could say that the plaintiffs and the defendants agree that the requirements of Article III standing are satisfied. That's fine. Yeah, because if I read the plain language of your brief, it says, plaintiffs have Article III standing to sue. Yeah, I don't think there should be a disagreement there. Now, that doesn't answer the next question. And before I turn to Mr. Van Orden on the merits, I'll just say one word about the statutory injury requirement. The fact that there's Article III standing doesn't mean that there is no statutory injury. That's Mr. Ard's response. But the statute requires something over and above the harm that Article III requires to be shown. I wanted to ask you a question about that. The Washington statute requires an injury to business, person, or reputation. And it seems to me that what is being argued here is not business or reputation, but person. So what does that mean in the Washington statute? So Your Honor, we have a couple of answers to that question. The injury that Mr. Ard has identified is the intrusion on seclusion injury. That's his common law claim analog. His brief at page 35, his opening brief, says that that injury is simply the intrusion itself. In other words, the law deems you to be injured when your intrusion, when your seclusion has been intruded upon. That's not a personal injury in the way that the Washington Supreme Court talks about personal injuries. We cite in our brief the Ambach case where the Washington Supreme Court sort of analyzed different kinds of personal injuries, bodily injury, emotional distress or psychological harm, financial injury. We have none of that here. We have none of those allegations. And we never would or will have those allegations here because if the plaintiff were to try to plead them, and obviously we're past the point of amendments to the pleadings, but if a plaintiff were to try to plead them, it would defeat the class certification that they desire. It would introduce individualized issues of emotional distress and whatnot. That's why they're steering away from any effort to plead those kinds of personal injuries. So for those reasons, there's no statutory injury that's been alleged here, and that's why the claim. So there's Article III standing. Everybody agrees on that. We're not saying the Court agrees, but the parties agree that there's that. Your claim, of course, is that there's no statutory standing because of the injury. And at this stage, in terms of moving forward, I'm not sure why we couldn't say that intrusion on seclusion isn't a personal injury. Well, Your Honor, I think the best reason not to take that path is the Washington Supreme Court's decision in Katerania. That's what I believe is the only case the Washington Supreme Court has had on the private civil suit provision, all the cases Mr. Ard is relying on are criminal cases. But in this Kateranian case, a class action was brought by the daughter of a criminal crime boss whose telephone call was recorded, and the Washington Supreme Court said we can perceive no injury on the facts alleged here. There was a recorded phone conversation that would otherwise meet what seemed to be the elements of the Washington Privacy Act, and the Washington Supreme Court said we see no injury here. So it's got to be more than the intrusion. It's got to be more than the recorded call. We know the Washington Supreme Court has held the statutory injury requirement to a higher level than that. In that particular case, was there consent? There was no consent. There was a court order to record a phone call involving the crime boss, but the daughter picked up the phone instead, and her phone call was recorded and captured. Now, I want to be clear. That case involved different issues than what we have here, but in the course of its discussion, the Washington Supreme Court said we can perceive no injury, even though there was a recorded, an unconsented recorded phone conversation. So, for that- On the pen register point, is that something you would argue or would one of your co-counsel argue that point as to the analogy here? I'll let Mr. Van Ort cover that, but I don't think we've satisfied the statutory definition of a pen register. There's no device affixed to a telephone line here. There's no device that's recording or sending electronic impulses, so I don't think the statutory definition of pen register is met. Do you think that, given the nature of this device, which seems to be both analytically and technologically distinct from some of the other devices that are in cases, that we should certify the question to the Washington Supreme Court? No, I don't think certification is needed here, Your Honor. I think the guidance that you already have from the Washington Supreme Court is ample, it's clear, and frankly, there are so many different ways to affirm on the merits, as Mr. Van Ort will explain. I think certification would really be a waste of the Washington Supreme Court's resources, so it's unneeded. With that, I'll submit we ask you to affirm, and I'll defer to my colleagues for additional arguments. Thank you. Thank you. Good morning, Your Honors. I'm Aaron Van Ort for Volkswagen, but addressing the merits of the Washington Privacy Act claim for all the defendants here. Your Honors, the clearest way to affirm here is to recognize that the Washington Privacy Act prohibits intercepting and recording. It does not prohibit manufacturing, and the complaints allege no more than the defendants manufactured here, and that is adequate to resolve the merits of the claim, and so Your Honors don't need to address consent or the difference between copying and recording or statutory injury. You can, of course, but manufacturing is sufficient, and the manufacturing point follows just a first from the direct text. Judge McEwen, you know, you referred to the text, and I read it the same way. The text says it's unlawful to intercept or record. Isn't there a problem with consent, though? Aren't there Washington State decisions that say lack of consent's not an element? I mean, I've bought cars over the years. I was never aware that simply by actuating the remote answering calls, et cetera, inside my car led to the recording of the information that's on the inside of my phone. Your Honor, what the Washington courts have held is that the very nature of sending texts or emails or anything written acknowledges that they have to be recorded, because otherwise there's no way to read them or print them, and the Washington Supreme Court has held that repeatedly. The leading case is Townsend, but after that there are many others, so Townsend and Ruckus and Cantor and Glantz, so all of them hold that, and just to be clear about what's factually alleged here, Your Honor, and this goes to the pen register, point two, what's alleged, there isn't an alleged that these vehicles get in between any two people making the calls. The only allegation is that it took things that were already on a phone and made more copies of them, right? And so this is clear, and it's in the excerpts of record at page 48, the paragraphs are 102 and 03, and then 19 and 20, and that's where it gets down to the nitty-gritty. So what's alleged here is that in every situation there's an owner of a vehicle and a friend, and the friend sends a text message or their, right, and what's alleged is the message gets to the phone, and then you hook the phone on, and then it makes a copy of something that's already been recorded, right? So just to be clear, that's what's happening. There isn't, as we addressed, there isn't a pen register, because under the text of the statute, a pen register has to be addressed to a telephone line, and nothing here is addressed to a telephone line. But it could be recording. I mean, you describe telephone, telephone to telephone to device in car. How does the text message or phone message get from telephone to device? It's recorded, isn't it? You mean, so you're right, the law distinguishes, Your Honor, between an initial recording, which is taking something that's transient in the air flowing, and then reducing it to a stored form. That's recording. It distinguishes between that and making subsequent copies. So the leading case here is the Kearney case. It was a husband and wife in a divorce, and the wife made illegal recordings, initial recordings. She violated the act, but then she gave them to a psychologist and police, and then there was a suit against the psychologist and the child advisor, saying that they violated it by getting those subsequent recordings or subsequent copies, and the court said no. The violation is only at the first step. So could it be simultaneous, in other words, if the phone is connected to the car, and then there's an incoming text or phone call, doesn't the device, just like the phone, simultaneously record that? The allegation, Your Honor, is that it's copied, that it's received by the phone first and then sent to the vehicle. There's no allegation here that these infotainment systems have their own cell signals, like that they could get it themselves. It has to go through the phone, right? That's the allegation in this case. But as I understand the technology, and correct me if I'm wrong, and I'm basing this on the four corners of the complaint, is that, among other things, the systems absorb the user's contact list. Is that right? I don't think that there's an allegation about a contact list, Your Honor. I think there's an allegation about text messages. Maybe I'm sipping outside the record. The call logs. In my car? In mine, too. My system absorbs my call list. Mine, too. Yeah. But you triggered it to do that. This goes to the consent point. It only does it if you tell your device to connect in some way, either physically or hook it up for Bluetooth. But I just want to loop back. So just to be clear, you're saying that there's not an interception, and you're saying there's no recording because it's not an initial recording, therefore it's copying, because it's outside the WPA. Yes. The WPA is concerned about grabbing something while it's in transit, listening in before it's been listened to, reading it before it's been listened to, pulling it down before it arrives. Counsel referred to State v. Roden. The facts, that was one of his two best cases. The facts in that case is that the police got a cell phone, and then it got a text, and the police read it before the defendant did. And they say if the police read it before the defendant does, that's a violation. There's no allegation here that anybody read any of this. So this is not a Roden case at all. This is more like an Allen v. Zonis case, Z-O-N-I-S. It's a Washington appellate decision from 2018 where the court specifically held that a husband who read text that his wife had with someone she was having an affair with after she read it is not a violation. So the interception either has to be physically grabbing it before it gets there or reading it before the recipient read it. And none of those happened here. That's not alleged. What is your best argument for consent? As I understand it, that's part of some of the arguments in this case. The best argument for consent, Your Honor, is this unbroken stream of cases saying that when you send a text, you know it is going to be recorded because it's inherent in it. And pairing that with what I just said, initial recordings are the only thing that the Act cares about, not subsequent copies. So plaintiffs in this case concede in their brief. This is page 18 of the reply brief. A person consents to his counterparty's complementary computer system recording electronic communications. So when Mark Jones, in my case, sent a text to Gellert Dornay, he knew his cell phone was going to record it. He didn't know what other devices the cell phone was going to be hooked up to, whether it's a computer at home or printing it or a car. It doesn't matter. The subsequent copying doesn't violate the statute. That's the best cases on consent. But I want to go back to, Your Honor, you know, some of these, you know, there are complicated questions here. And the courts in Washington have worked through them on consent and copying and injury and all that. Manufacturing is not complicated at all. There's no allegation in these complaints that the defendants did anything after they sold the vehicle. There isn't a single case in Washington holding a manufacturer liable ever, notwithstanding the fact that in every single case there was a manufacturer of every device that was used, whether it was the cordless phone or whether it was the computer or whether it's the phone on text messages. It doesn't matter. You have a medical device manufactured by your client, and it's given to a patient, and then it records various data from the patient's body. So the device is recording. In your view, does the manufacturer escape liability under this law because the manufacturer itself isn't recording and it's only manufacturing? Yeah. I don't think there's any liability for manufacturing, Your Honor. But why in that case, the device is recording. In fact, it's manufactured so it would record, just like the device here is manufactured in a way that would retain this data. That's right. And manufacturing is fine. That's not wiretapping. Even if manufacturing ultimately leads to recording? Yeah. Would you say then that the device is not recording? It seems pretty clear that the device is recording, but as Your Honor's pointed out, devices can't violate the law. Everybody agrees on that. They aren't suing the infotainment systems. They're suing companies, and you sue people. So devices can do that. It's like if you adopted their view, then Samsung and Apple and Dell and everybody who someone else uses those devices to intercept and record the manufacturers are liable. And that's not what the law holds. It's not what the texts say, and it's not what any case has ever held on that. Your Honor, when you asked Judge Hawkins, what are your best cases on manufacturers being liable? He was telling that there wasn't any answer because Rodin was a police officer who has claimed to have violated this. The manufacturer in that case of the cell phone was not held liable. The other case is Gunwale, which was an honest-to-goodness pen register case back in the 80s, and that's a constitutional case. It's not about the WPA. The WPA is mentioned in passing. But notably, the manufacturer of the pen register wasn't held liable in that case either. Right? Thank you. That was the state. So, if there are any other questions, I see I'm past my time, but otherwise- I don't think there's any further questions. Thank you. Thank you, Your Honor. Good morning, Your Honor. Eric Wolf for Toyota. I don't know if you have any other topics to address or not. I would make just a couple quick points based on everything you just covered. Judge McKeon, you raised TransUnion, and you asked, like, you know, why isn't this similar to the folks who didn't have their credit reports disclosed in TransUnion? And in some ways, it is similar because, you know, the thing they fear has not happened. But that was- the thread there, the analogy, the historical analogy was defamation, and that requires dissemination. Intrusion upon seclusion is different. And as I read this Court's cases, the sort of privacy standing cases, and this circuit probably gets more of them than any other, one of the lines you all draw is this, like, do you have something tracking you? So if you're on a website or you're on Facebook or something, is it tracking private information and intruding upon your seclusion? You have an ESPN case where it's tracking the videos you're streaming and then disclosing that elsewhere. So this sort of, you've got a device that is tracking, that is a line. And if all you're doing is collecting stuff without any intrusion, that's different. You know, if I'm out there, you know, surfing the Internet on someone and collecting information about them, that's not an intrusion on them. But if I have a device that is capturing things, that seems to be how this Court distinguishes for Article III purposes. So, but then, if you move beyond Article III, they would say that also meets the statutory definition as well because you're doing the same thing. So what's the difference? And I would go the same lines of argument you heard from my co-defendant, you know, big surprise. But the intrusion upon seclusion may get you over the Article III hurdle. I think that statutory injury hurdle, you know, what is the injury from that? I mean, it's emotional distress. And if they had alleged some type of emotional distress, I mean, this is a tricky area for courts, but like, typically, if you allege some distress and you get some kind of physical manifestation, that will satisfy them. And that's a traditional injury, is emotional distress. So I think the personal is going to have to be something like that. I don't think the mere intrusion is going to get you there. And I can't improve upon the example that was given of the mob boss's daughter picking up the phone. I mean, I think that does illustrate it. But if you had the emotional distress, I think that might be different, if you could satisfy the emotional distress stuff. And then on the manufacturing and what – Oh, if the – would that lead to a potential amendment of the complaint? I suppose they could try. That's probably not a complaint they want, Your Honor, because – That's the problem. Yeah. It's hard to allege emotional distress for a group. I just want to say, one of the missing elements here, when it gets to manufacturing, and I just want to make sure that we're clear about this in the record, it is not – you can imagine a situation where things are kind of getting beamed up from the car and they're collected somewhere, and there's some cloud or whatnot. But that is not the allegation.  In their own car, as I understand the allegation, it's my phone and my car have the same list of items. Yep. That's right. And that's – I mean, that's all the system is supposed to do, is just to help you use your phone when you're in your car. It's not – it's not there to, you know, spy on you or provide a repository. I mean, it's just part of using your phone. And that's all that's in the allegations. Mr. Ard acknowledged – I think you asked it, Judge Graber, that, you know, is there any suggestion that anybody has seen this or whatnot? The answer's no. It's very clear in their reply brief. We acknowledge nobody's looked at anything. Would it be different if the device was a little more like Alexa, and as you were talking, it was recording not only a number, kind of like a pen register, but the conversation, and it just sat there? It didn't go anywhere, but it did record. Would that be different? Yeah. I think if you actually have recording, then you get past the recording element. I think what's going to happen in all these cases – and frankly, it would happen here, but we're still at the pleading stage, and they pled it the way they pled it – you know, these things all ask for your consent. I mean, we all click through the stuff before we start sending information anywhere. At least on a lot of cars I've been in, they ask you, like, do you want to sync up all your contacts and whatnot? So, you know, we're not there yet in this case, but, like, typically that is the work around for a device that is going to transmit or something like that. But here, you know, a company has to intercept, a company has to record. There's been no interception, there's been no recording by the company. There's just this device, and that's it. Thank you. Thank you. Mr. Ard. Thank you. I want to make a couple brief rebuttals. Counsel said that there's no allegation of copying things that are not on the device. That absolutely is alleged in the complaint. When you connect your device, send a text to a counterparty, that new text is recorded. Whether it's instantaneous or not doesn't matter. It's certainly recorded before it gets to the counterparty, and we have two plaintiffs in each case. And if you look at Roden, the court specifically says that the question of timing as to interception is not before the court. That's not decided in Roden. The dissent would have decided it. The court does not. Kearney does not hold what they would say it does. Kearney is the case that says divulging is no longer a violation. It was deleted from the statute. As to installing a pen register, I don't see what else you could say about putting this device into a car. They installed it. It attaches to a phone line. It decodes the electronic impulses that identify the numbers dialed, and it records a log of those calls. It absolutely fits the statutory definition of a pen register. But they would say it doesn't fit the definition because you have point-to-point recording in a pen register. The pen register records, decodes, and records the electronic impulses that show the numbers dialed from a phone line it's attached to. So when you connect your phone, what else is that? That's the phone line. It's attached to the device. It decodes the impulses. It records the numbers. I think it is on all fours with the statutory definition of pen register. I don't want to intrude on your rebuttal, but the manufacturing point keeps coming up. Would you address that, please? Your Honor, I think this is more than simply manufacturing. This is not just making a thumb drive. OK? They've intentionally... Making a what? I didn't hear you. It's not just like making a thumb drive. Right. They have designed and installed a device that has the purpose and function of making unnecessary copies. We allege that they're unnecessary. We allege that it's not part of the necessary function of the device. It doesn't need to be done. So what about a manufacturer of a tape recorder in the olden days? Its only function is to record things. But it doesn't have to function to... So you could use a tape recorder to violate the Washington Privacy Act, or you could tell someone, hey, I'm going to record this. Isn't that OK? Isn't that the same as this situation in which there is no allegation that any third party has ever accessed this information? But again, accessing the information isn't an element of the violation of the Washington Privacy Act. That's divulging, which has been written back out of the statute. The statute used to say intercept or record or divulge. And what they'd have you say is it has to be intercept or record and divulge. But divulge isn't even in the statute anymore. OK. I mean, they built a device specifically to keep these things for police access. That's the absolute allegation in the complaint. The only people who can get at this own a piece of equipment that is sold only to law enforcement agencies. That's not like a tape recorder. That's not like a thumb drive. That's not like any other device in any case. And to your question, Judge McCoon, very briefly, if the court thinks that the Supreme Court would agree with the defendants, I would say this is absolutely something that should be certified to them, because they have always expanded the Washington Privacy Act to protect the privacy interests of Washington citizens. And they say that in all their cases. And I think this is one where Washington citizens' privacy interests have very clearly been invaded. Thank you. Thank you. I'd like to thank all counsel for the very good arguments this morning. The case of Jones v. Ford Motor Company and the other defendant of Appalese is submitted and we're adjourned for the morning. All rise.  Thank you.
judges: HAWKINS, GRABER, McKEOWN